IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHABONDY LAMAR SIMPSON,

Plaintiff,

vs.

N. FELTSEN, *et al.*,

Defendants.

Case No. 2:09-cv-00302-MSB

**ORDER**

This case was reassigned to the undersigned judge. (Dkt. #7). Plaintiff Shabondy Simpson, who is confined in the High Desert State Prison, Susanville, has filed a *pro se* civil rights complaint under 42 U.S.C. § 1983. (Dkt. #1). After screening Simpson's complaint pursuant to 28 U.S.C. § 1915A, the Court will order Defendants Broddrick, Bush, Feltsen, Packard, and Zaniroll to answer Simpson's First Amendment retaliation claim and Defendants Bush, Broddrick, Cannon, Crocker, Ebbitt, Feltsen, Kramer, Packard, Ramacher, and Zaniroll to answer Simpson's malicious prosecution claim. The Court will dismiss the remaining claims without prejudice.

## I. Statutory Screening of Prisoner's Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may

be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

**II. Complaint**

In his Complaint, Simpson sets forth several claims for relief, alleging violations of his rights under the First, Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution. Specifically, Simpson contends that (1) Defendants Kramer and Packard retaliated against him in violation of the First Amendment by "send[ing] a letter to [his] wife taking [away] her visitation right's [sic] . . . without even a good reason" because he refused to disclose "where he'd gotten the marijana [sic] joint he smoked before his conjugal visit" (Dkt. #1 at 6); (2) Defendants Feltsen and Packard, with the consent of Broddrick, Bush, and Zaniroll, retaliated against him in violation of the First Amendment by fabricating charges that he had "threatened [Feltsen]" because he "encouraged his cell partners [sic] wife to take litigation against Feltsen and Packard" (*id.* at 16), resulting in his transfer to the High Desert State Prison, Susanville (*id.* at 21); (3) Defendants Cade, Cannon, Crocker, and Kramer violated his First Amendment right to religious expression by "insist[ing] [he] take out dreadlock's [sic] they knew could not be taken out" (*id.* at 17); (4) Packard violated his Fourth Amendment rights by "searching [his] cell leaving it trashed" (*id.* at 5); (5) Cade, Cannon, Crocker, Kramer, and Packard violated his Eighth Amendment rights by "refus[ing] [him] visitation rights with his wife and family," which led him to attempt to commit suicide (*id.* at 17-18; *see also id.* at 12, 14); (6) Feltsen, Kramer, and Packard violated his Fourteenth Amendment right to due process by "hav[ing] [him] locked up in administrative segregation . . . from July 31[,] 2007 to December 28, 2007" (*id.* at 17; *see also id.* at 11); and (7) Broddrick, Bush, Cannon, Crocker, Feltsen, Kramer, Packard, and Zaniroll engaged in the "fabrication of evidence" against him with malice, amounting to malicious prosecution (*id.* at 18-19).

Simpson also asserts several state law claims for relief. He contends that the defendants "fabricated legal documents against [him]" in violation of California Penal Code §§ 118.1, 133, and 134 (*id.* at 20-21), and prevented him from "assist[ing] other inmates . .

. without reprisal" in violation of California Code of Regulations §§ 3084.1(d) and 3163 (*id.* at 21).

## III. Discussion

### A. Pleading Standard

*Pro se* pleadings are to be liberally construed. *Hains v. Kerner*, 404 U.S. 519, 520-21 (1972). Nonetheless, a *pro se* plaintiff must satisfy the pleading standard set forth in the Federal Rules of Civil Procedure, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* If the pleading can be cured by the allegation of other facts, a *pro se* litigant is entitled to an opportunity to amend his complaint. *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc).

### B. Section 1983

42 U.S.C. § 1983 provides a cause of action against persons acting under color of state law who have violated rights guaranteed by the U.S. Constitution, not rights guaranteed by state law. *See Ove v. Gwinn*, 264 F.3d 817, 824 (9th Cir. 2001); *Sweaney v. Ada County*, 199 F.3d 1385, 1391 (9th Cir. 1997). To state a valid claim for relief under § 1983, a plaintiff must allege that he suffered a specific injury as a result of a defendant's specific conduct and show an affirmative link between his injury and that defendant's conduct. *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

### C. First Amendment Retaliation – Transfer

Simpson contends that (1) Kramer and Packard retaliated against him because he refused to "snitch," and (2) Feltsen and Packard retaliated against him because he encouraged his cell mate's wife to pursue legal action against them. Simpson's first retaliation claim, discussed below in Subsection D, fails to state a claim for relief under the First Amendment.

Simpson's second claim, however, does state a claim for relief under the First Amendment for screening purposes.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

Simpson alleges that Feltsen and Packard, with the consent of Broddrick, Bush, and Zaniroll,[1] (1) fabricated charges that he threatened Feltsen, resulting in his transfer to the High Desert State Prison, (2) because he (3) advised his cell mate's wife to file suit against Feltsen and Packard. He also alleges that (4) Feltsen and Packard's actions chilled his First Amendment rights and (5) were not undertaken to advance legitimate penological purposes. (Dkt. #1 at 16, 21).

These allegations are sufficient for screening purposes to establish a First Amendment claim against Feltsen, Packard, Broddrick, Bush, and Zaniroll. *See Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) (holding that "repeated threats of transfer because of [the plaintiff's] complaints about the administration of the [prison] library" were sufficient to ground a retaliation claim); *see also Rhodes*, 408 F.3d at 569 ("Rhodes' allegations that his First Amendment rights were chilled, though not necessarily silenced, is enough to perfect his claim."); *Mendocino Envtl. Center v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999) ("[T]he proper inquiry asks whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.") (internal quotation marks and citation omitted); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (holding that prison

---

[1] Simpson alleges that Broddrick, Bush, and Zaniroll knew that Feltsen and Packard's charges against him were false but nonetheless approved findings concluding that Simpson had threatened Feltsen because they "had to go along with [their] officer." (Dkt. #1 at 18-19).

officials may not "transfer an inmate to another prison in retaliation for the inmate's exercise of his First Amendment right[s]").

**D. First Amendment Retaliation – Suspension of Conjugal Visits**

Simpson alleges that Kramer and Packard violated his First Amendment rights by (1) temporarily suspending his conjugal visits with his wife (2) because he (3) would not disclose the source of the marijuana he had purchased in the Folsom State Prison. (Dkt. #1 at 4-9). These allegations do not state a First Amendment retaliation claim against Kramer and Packard.

Simpson's failure to disclose his source of drugs is not protected conduct under the First Amendment. *See Pell v. Procunier*, 417 U.S. 817, 822 (1974) (holding that prisoners retain only those First Amendment rights "that are not inconsistent with [their] status as [] prisoner[s] or with the legitimate penological objectives of the corrections system"). Moreover, Simpson does not allege that Kramer and Packard's actions chilled his First Amendment rights. Indeed, following the temporary suspension of Mrs. Simpson's conjugal visits, Simpson did not disclose the source of his drugs and went on to file numerous complaints. Lastly, Simpson does not allege facts showing that the suspension of Mrs. Simpson's visiting privileges or lacked a legitimate penological goal. Simpson tested negative for marijuana before beginning his conjugal visit on January 27, 2007, and tested positive after the visit concluded on January 31, 2007. (Dkt. #1, Exh. C). Mrs. Simpson was Simpson's only visitor during that time. (*Id.*). Although Simpson alleges that he purchased the marijuana prior to the conjugal visit, he did not identify his source. (Dkt. #1 at 4-5). Thus, Kramer and Packard reasonably could have believed that temporarily suspending Simpson's conjugal visits with his wife would help prevent the introduction of controlled substances into the prison grounds. Accordingly, Simpson fails to state a First Amendment claim against Feltsen and Packard for their temporary suspension of his conjugal visitation rights.

**E. First Amendment Free Exercise of Religion**

Simpson claims that Cade, Cannon, Crocker, and Kramer violated his First Amendment free exercise right by insisting that Simpson remove his dreadlocks. (Dkt. #1 at 17).

"The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam). "In order to establish a free exercise violation, [the prisoner] must show the defendants burdened the practice of his religion . . . by preventing [him] from engaging in conduct mandated by his faith." *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997).

Simpson does not allege that Cade, Cannon, Crocker, or Kramer actually required him to undo his dreadlocks; only that they harassed him about his dreadlocks. In addition, Simpson does not state what conduct his religious practice requires or how defendants prevented him from engaging in it. Thus, Simpson fails to state a claim under the Free Exercise Clause.

**F. Fourth Amendment**

Prisoners have no Fourth Amendment right of privacy in their cells. *See Hudson v. Palmer*, 468 U.S. 517, 527-28 (1984) ("A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order."); *Mitchell v. Dupnik*, 75 F.3d 517, 522 (9th Cir. 1996); *Portillo v. U.S. Dist. Court*, 15 F. 3d 819, 823 (9th Cir. 1994) (per curiam). Accordingly, Simpson's contention that Packard violated his Fourth Amendment rights by "searching [his] cell leaving it trashed" does not state a claim for relief. (Dkt. #1 at 5).

**G. Eighth Amendment**

Simpson alleges that Cade, Cannon, Crocker, Kramer, and Packard violated the Eighth Amendment's prohibition against cruel and unusual punishment by "refus[ing] [him] visitation privileges with his wife and family" while he was being held in administrative

segregation from July 31 to December 28, 2007, which led him to attempt suicide. (Dkt. #1 at 17-18).

Courts have considered constitutional claims pertaining to a prisoner's denial of visitation under both the Eighth and Fourteenth Amendments. *See generally Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454 (1989) (considering the denial of visitation rights under the Due Process Clause of the Fourteenth Amendment); *Keenan v. Hall*, 83 F.3d 1083 (9th Cir. 1996) (considering the denial of visitation rights under the Eight Amendment). "[T]here is no constitutional right of 'access to a particular visitor.'" *Keenan*, 83 F.3d at 1092 (quoting *Ky. Dep't of Corr.*, 490 U.S. at 460-61). Simpson does not allege that he has been denied visitation altogether. *Cf. Thomas v Bierley*, 481 F.2d 660, 661 (3d Cir. 1973) (per curiam); *Almond v. Kent*, 459 F.2d 200, 204 (4th Cir. 1972). Nor does he allege that the denial of his visitation privileges with his family during his five month administrative segregation constituted an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995). *Cf. Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (remanding for district court to consider whether § 1983 plaintiff's two year placement in administrative segregation constituted "atypical and significant hardship" where the segregated unit was overcrowded and violent, the isolation severed plaintiff's ties with his family, and plaintiff was "made a patient of psychiatric programs" while segregated), *cert. denied*, 541 U.S. 1063 (2004). Accordingly, Simpson fails to state a claim under the Eighth or Fourteenth Amendments for the temporary denial of family visitation.

Simpson's allegation that the temporary denial of his visitation privileges with his family lead him to attempt suicide does not remedy his failure to state a claim. "Prison officials have a duty to take reasonable steps to protect inmates from physical abuse." *Hoptowit v. Ray*, 682 F. 2d 1237, 1250-51 (9th Cir. 1982). To establish a violation of this duty, however, Simpson must establish that prison officials were "deliberately indifferent" to serious threats to his safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). But Simpson's complaint provides no information about his alleged suicide attempt, and Simpson

fails to allege that serious threats to his safety existed or that prison officials were deliberately indifferent to such threats. Thus, Simpson fails to state a claim relating to his attempted suicide.

**H. Fourteenth Amendment Due Process**

"[S]tate law may create enforceable liberty interests in the prison setting." *Ky. Dep't of Corrections*, 490 U.S. at 461. But "administrative segregation in and of itself does not implicate a protected liberty interest" under the Due Process Clause. *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (citations omitted). In order "to give rise to protection by the Due Process Clause," administrative segregation must "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Assuming, without deciding, that Simpson's five-month administrative segregation constituted an atypical and significant hardship for him in relation to the ordinary incidents of prison life, Simpson fails to state a claim because he was not deprived of procedural due process in connection with his administrative segregation. In his complaint, Simpson states that he was granted a hearing soon after he was placed in administrative segregation. (Dkt. #1 at 5). The hearing was nonadversarial, Simpson was informed of the charges against him, and he was given the opportunity to make a statement, submit information, and request the presence of witnesses. (*Id.*, Exh. D). Simpson therefore fails to state a claim under the Due Process Clause of the Fourteenth Amendment. *See Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1986) (holding that placement in administrative segregation requires only notice to the prisoner, an opportunity for the prisoner to submit information, and a non-adversary review of information supporting placement), *abrogated in part by Sandin*, 459 U.S. at 476; *Bostic v. Carlson*, 884 F.2d 1267, 1270 (9th Cir. 1989) (explaining that a prison's failure to meet its own guidelines regarding hearing deadlines does not constitute denial of due process).

**I. State Law Claims**

Simpson asserts several state law claims for relief based on the same allegations that underlie his federal constitutional claims. (Dkt. #1 at 21-22). In particular, he contends that the defendants (1) "fabricated legal documents against [him]" in violation of California Penal Code §§ 118.1, 133, and 134 (*id.*), and (2) prevented him from "assist[ing] other inmates . . . without reprisal" in violation of California Code of Regulations §§ 3084.1(d) and 3163 (*id.* at 21).

Where a federal court has jurisdiction pursuant to 42 U.S.C. § 1983, the court may exercise "pendent" or "supplemental" jurisdiction over closely related state law claims asserted in the complaint. *See Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) (citing 28 U.S.C. § 1367(a)). "[A] plaintiff's pendent state law claims against a state or state employees are barred unless the plaintiff has complied with the requirements of the California Tort Claims Act ('CTCA') before commencing the civil action." *Wayne v. Leal*, 2009 WL 2406299, at *7 (S.D. Cal. 2009) (citing *Ortega v. O'Connor*, 764 F.2d 703, 707 (9th Cir. 1985), *rev'd in part on other grounds*, 480 U.S. 709 (1987)); *see Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 627 (9th Cir. 1988) (affirming dismissal of pendent state law claims against public employee where plaintiff failed to allege compliance with the CTCA). The CTCA applies to claims brought against state employees "for injury resulting from an act or omission in the scope of his employment as a public employee," Cal. Gov't Code § 950.2, and requires that tort claims against state employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues, Cal. Gov't Code §§ 910, 911.2.

Here, Simpson alleges that he presented his claims to the State Board of Control. *See* Dkt. #1 at 2.

i. California Penal Code §§ 118.1, 133, & 134

Simpson claims that Defendants Feltsen, Packard, Crocker, Cannon, Ebbitt, and Kramer "fabricated legal documents against [him]" and filed administrative charges against him in violation of California Penal Code §§ 118.1, 133, and 134. (Dkt. #1 at 21-21).

California Penal Code §§ 118.1, 133, and 134, however, are criminal statutes providing criminal penalties for peace officers preparing false reports, persons preparing false documentary evidence, and persons deceiving witnesses, respectively. Those statutes do not provide a civil remedy against the defendants. *See Michael R. v. Jeffrey B.*, 205 Cal. Rptr. 312, 318 (Cal. App. 1984) ("[A] statute that provides solely for a criminal penalty does not create a civil liability . . . .") (emphasis omitted); *Parra v. Hernandez*, 2009 WL 3818376, at *7 (S.D. Cal. 2009) (dismissing a prisoner's state law claim brought under a provision of the California Penal Code imposing criminal penalties on persons for lack of a private right of action).

In the alternative, Simpson claims that Defendants Bush, Broddrick, Cannon, Crocker, Ebbitt, Feltsen, Kramer, Packard, Ramacher, and Zaniroll, engaged in malicious prosecution. (Dkt. #1 at 21). To establish a cause of action for malicious prosecution of an administrative proceeding, "a plaintiff must demonstrate that (1) the prior action was commenced by or at the direction of the defendant and was pursued to termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice." *Sheldon Appel Co. v. Albert & Oliker*, 765 P.2d 498, (Cal. 1989) (internal quotation marks and citations omitted); *see Nicholson v. Lucas*, 26 Cal. Rptr. 2d 778, 781 (Cal. App. 1994) ("A malicious prosecution action may be based on a proceeding before an administrative board or agency."). Simpson alleges that a November 18, 2007 rules violation report was maliciously initiated against him. (Dkt. #1, Exh. H). The resulting administrative proceeding appears to have been terminated in his favor as he was found "Not Guilty." (*Id.*). Accordingly, Simpson states a state law malicious prosecution claim against the defendants for screening purposes.

ii. California Code of Regulations §§ 3163 & 3084.1(d)

Simpson claims that the "defendants" prevented him from providing legal assistance to his cell mate and his cell mate's wife in violation of Title 15 of the California Code of Regulations §§ 3163 (providing that "[a]n inmate will not be barred from giving . . . legal assistance [to another inmate] for violations of regulations and procedures [that] are unrelated

to providing or receiving legal assistance") & 3084.1(d) (providing that "[n]o reprisal shall be taken against an inmate . . . for filing an appeal"). (Dkt. #1 at 21). Simpson does not specifically identify the defendants that allegedly violated these regulations, however. *See* Dkt. #1 at 21. Additionally, while Title 15 of the California Code of Regulations governs the conduct of prison employees, it does not provide a cause of action against them. *See, e.g.*, *Chappell v. Newbarth*, 2009 WL 1211372, at *9 (E.D. Cal. 2009) (holding that there is no private right of action under Title 15 of the California Code of Regulation); *Parra*, 2009 WL 3818376, at *2, 8 (same). In any event, the Court notes that Simpson is already pursuing a civil remedy for the defendants' alleged retaliation against him for providing legal assistance to his cell mate and his cell mate's wife through his retaliation claim under section 1983.

## V. Warnings

### A. Address Changes

Simpson must file and serve a notice of a change of address in accordance with Rule 83-182(f) and 83-183(b) of the Local Rules of Civil Procedure. Simpson must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### B. Copies

Simpson must submit an additional copy of every filing for use by the Court. *See* LRCiv 5-133(d)(2). Failure to comply may result in the filing being stricken without further notice.

### C. Amended Complaint

An amended complaint entirely supersedes the original complaint. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). After amendment, the original complaint is treated as nonexistent. *Id.* Any cause of action that was raised in the original complaint is waived if it is not raised in a first amended complaint. *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

### D. Possible Dismissal

If Simpson fails to timely comply with every provision of this order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order).

**Accordingly,**

**IT IS HEREBY ORDERED THAT:**

(1) Plaintiff's Fourth, Eighth, and Fourteenth Amendment claims are **dismissed** without prejudice for failure to state a claim. Plaintiff's free exercise claim is also dismissed without prejudice.

(2) Defendants Broddrick, Bush, Feltsen, Packard, and Zaniroll shall answer Plaintiff's First Amendment retaliation claim concerning his transfer to the High Desert State Prison. Defendants Bush, Broddrick, Cannon, Crocker, Ebbitt, Feltsen, Kramer, Packard, Ramacher, and Zaniroll, shall answer Plaintiff's state law claim concerning malicious prosecution.

(3) Plaintiff is granted leave to amend his complaint to state a free exercise of religion claim and an Eighth Amendment claim regarding the denial of his visitation rights that are sufficiently concrete to warrant judicial intervention. Within **30 days** of the date of this order, Plaintiff may submit an amended complaint on the form provided with this order. Plaintiff must clearly designate on the face of the document that it is the "First Amended Complaint." The amended complaint must be retyped or rewritten in its entirety on the form provided with this order and may not incorporate any part of the original Complaint by reference.

(4) The Clerk of the Court shall send Plaintiff a service packet including the Complaint (Dkt. #1), this order, a Notice of Submission of Documents form, an instruction sheet, and copies of summons and USM-285 forms for Defendants Broddrick, Bush, Feltsen, Packard, and Zaniroll.

(5) Within **30 days** of the date of filing of this order, Plaintiff must complete and return to the Clerk of the Court the Notice of Submission of Documents. Plaintiff shall

submit with the Notice of Submission of Documents: a copy of the Complaint for each Defendant, a copy of this order for each Defendant, a completed summons for each Defendant, and a completed USM-285 for each Defendant.

(6) Plaintiff shall not attempt service on Defendants and must not request waiver of service. Once the Clerk of the Court has received the Notice of Submission of Documents and the required documents, the Court will direct the United States Marshal to seek waiver of service from each Defendant or serve each Defendant.

(7) **If Plaintiff fails to return the Notice of Submission of Documents and the required documents within 30 days of the date of filing of this order, the Clerk of Court shall, without further notice, enter a judgment of dismissal of this action without prejudice.** *See* **Fed. R. Civ. P. 41(b).**

DATED this 9th day of April, 2010.

/s/ Marsha S. Berzon
MARSHA S. BERZON
United States Circuit Judge, sitting by designation

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **SIMPSON,**<br>Plaintiff,<br>vs.<br>FELTSEN, et al.<br>Defendant. | 2:09-cv-00302-MSB<br><br>NOTICE OF SUBMISSION OF DOCUMENTS |

Plaintiff hereby submits the following documents in compliance with the court's order filed _______________:

______ completed summons form

______ completed USM-285 forms

______ copies of the ________________
Complaint/Amended Complaint

DATED:

____________________________________
Plaintiff