# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHABONDY LAMAR SIMPSON, | Case No. 2:09-cv-00302-MSB |
| Plaintiff, | **ORDER** |
| vs. | |
| N. FELTSEN, *et al.*, | |
| Defendants. | |

Plaintiff Shabondy Lamar Simpson, currently incarcerated and proceeding *pro se*, has filed suit under 42 U.S.C. § 1983 against Defendants Bush, Broddrick, Cannon, Crocker, Ebbitt, Feltsen, Kramer, Packard, Ramacher, and Zaniroll (collectively, "Defendants"). The Defendants all worked at Folsom State Prison where Simpson was previously incarcerated for all times relevant to this suit. Simpson alleges that Broddrick, Bush, Feltsen, Packard and Zaniroll fabricated disciplinary charges against him in retaliation for exercising his First Amendment rights, which ultimately resulted in Simpson's transfer to High Desert State Prison. Simpson also alleges that all Defendants engaged in malicious prosecution by fabricating another disciplinary charge that accused him of threatening a guard, Defendant Feltsen.

Now pending before the Court is Defendants motion to dismiss Simpson's complaint under Federal Rule of Civil Procedure 12(b). Defendants argue that Simpson failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act

1 ("PLRA"), and that his complaint does not state a claim on which relief can be granted.
2 (Dkt. # 19).[1]  As discussed below, the Court grants Defendants' motion to dismiss Simpson's
3 First Amendment retaliation claim for the failure to exhaust available administrative
4 remedies and declines to exercise its supplemental jurisdiction over the remaining state-law
5 claim, which is dismissed without prejudice to refiling in state court.

**I.**

7 The Court assumes the parties' familiarity with the facts underlying this case and only
8 discusses those facts necessary for the resolution of the pending motion to dismiss.  On
9 January 28, 2007, while incarcerated at Folsom State Prison, Simpson purchased and smoked
10 a marijuana cigarette just before a multi-day conjugal visit with his wife Stacey. (Compl. ¶
11 15, Dkt. # 1).  Simpson passed his pre-visit drug test, but failed the test administered after
12 he returned to the general population, for which he was given a "CDC-115 Rules Violation
13 Report."  (*Id.* ¶ 17).

14 Simpson alleges that Defendant Packard and other members of Folsom's Investigative
15 Services Unit (ISU) wanted to crack down on marijuana trafficking in the prison and
16 "has[s]led and harrassed [him] daily" to divulge his source. (*Id.* ¶ 20).  On February 23,
17 2007, Defendant Kramer, Warden of Folsom State Prison, sent a letter to Stacey informing
18 her that she was barred from any future visits because of Simpson's positive drug test.  (*Id.*
19 ¶ 23).  Kramer's letter explained that because Stacey was Simpson's only visitor between the
20 negative and positive tests, she was the most likely person to have provided Simpson with
21 marijuana. (*Id.* at Ex. B).   At his hearing for the rules' violation on March 6, 2007, Simpson
22 pled guilty to possessing marijuana, but continued to refuse all entreaties to identify his
23 source.  (*Id.* ¶¶ 18–19).

24 On April 30, 2007, Defendant Feltsen cited Simpson's cellmate, T. Bobbitt, for
25 "excessive contact" during Bobbitt's visit with his wife. (*Id.* ¶ 29).  On July 29, 2007,

---

27 [1]  The motion to dismiss was filed on behalf of all the defendants except Defendant
Zaniroll, but by motion dated August 19, 2010, Defendant Zaniroll joined in the other
28 defendants' motion to dismiss (Dkt. # 22).

1  Feltsen allegedly interrupted Bobbitt's visit with his children and interrogated Bobbitt's
2  children about whether they had smuggled drugs into their father. (*Id.*). The next day
3  Simpson called Bobbitt's wife to suggest that she sue Feltsen for Feltson's alleged actions
4  during the visit. (*Id.* ¶ 30). Apparently unbeknownst to Simpson, Feltson was monitoring
5  the call, and subsequently reported that Simpson told Bobbitt's wife during the call that she
6  (Feltson) "is through this time!" (*Id.*, Ex. D at 1). Later that day, Simpson called Stacey and
7  told her that was going to be "going to the hole for 'whooping' on one of them," which
8  Feltson (again monitoring the call) took to mean that Simpson intended to assault an ISU
9  officer. (*Id.*, Ex. D at 2).

10  Feltson reported her observations, along with her belief that they indicated that
11  Simpson "will be aggressive toward ISU staff, possibly leading to an assault." (*Id.*, Ex. D
12  at 2). As a consequence, Simpson was placed in administrative segregation on July 31, 2007;
13  while being escorted from his cell, Simpson allegedly yelled at Feltson that she had "fucked
14  up," which Feltson also perceived as a threat. (*Id.*, Ex. D at 2). Feltsen filed a Rules
15  Violation Report (RVR) against Simpson on August 1, 2007 accusing Simpson of threatening
16  her with physical violence. (*Id.*, Ex. D at 2). On August 19, 2007, based on Feltsen's RVR,
17  Defendant Broddrick found Simpson guilty of threatening staff. (*Id.*, Ex. D at 4).

18  Simpson alleges that he filed a CDC-602[2] grievance against Feltsen regarding the
19  RVR, which he believed to be false, but he says it "wasn't prosecuted, or process[ed]." (*Id.*
20  ¶ 34). Shortly thereafter, Simpson alleges that ISU Officer Mendoza and Defendants
21  Crocker, Cannon, and Packard began harassing him for filing the grievance, encouraging
22  Bobbitt's wife to "get an attorney on Defendant Feltsen," and for hiring his own attorney to
23  pursue a civil suit against the prison. (*Id.* ¶ 35). These Defendants allegedly denied Simpson
24  weekly visits with his family because Simpson would not take the "braids" out of his hair.
25  (*Id.*) Simpson told them that his "braids" were dreadlocks, a sacred part of his Rastafarian
26  religion. (*Id.*) After Simpson gave each Defendant a copy of an Eastern District of

---

28  [2] "CDC-602" is the form number for inmate grievances.

- 3 -

1  California decision about religious practice in prison, Simpson alleges that Officer Cade told
2  him: "You ain't getting it; it's not the hair, we're doing you because you're filing all this
3  bitch legal shit." (*Id.*).

4  Simpson attempted to contact Warden Kramer to rectify the situation. (*Id.* ¶ 36).
5  Simpson's attempts, however, were unavailing, as Packard allegedly told him that Kramer
6  "gave [Defendants] the green light to step up [their] game on [him]." (*Id.*). Therefore, on
7  or about October 29, 2007, Simpson filed another CDC-602 grievance, this one requesting:
8  (1) visits with his wife and family without being harassed; (2) contact visits with his family
9  (i.e., visits where he and his family were not separate by a glass barrier); (3) reprimands
10 issued to all culpable staff members; (4) leave to file a civil suit; and (5) a transfer to
11 California State Prison-Sacramento. (*Id.*, Ex. C-2 at 2). Defendant Ebbitt granted
12 Simpson's appeal insofar as it requested contact visits and leave to file a civil suit, but denied
13 Simpson's requests to reinstate his wife's visitation rights, to reprimand staff members, and
14 to be transferred to Sacramento. (*Id.*, Ex. C-2 at 1). Instead, Ebbitt transferred Simpson to
15 High Desert State Prison. (*Id.*). The record is silent as to whether Simpson appealed this
16 decision to the second level.

17  On November 17, 2007, Defendants Crocker submitted a second RVR for Simpson,
18 accusing him of stating during a phone call with another inmate: "You can tell Miss Feltsen
19 to stay off that phone. I'm going to whip that fucking ass." (*Id.*, Ex. H-1 at 1). Two days
20 later, Simpson filed another CDC-602 grievance, in which he stated that he had been told on
21 November 14, 2007, that Defendants Crocker and Cannon were planning on filing a falsified
22 write-up accusing Simpson of threatening Feltsen again. (*Id.*, Ex. F at 3). In the space
23 marked "Action Requested," Simpson wrote: "To have this staff member reprimanded for
24 her unlawful conduct. And for her and other violating civil rights filing under official
25 capacity and individual capacity stop harassment and to be log and document." (*Id.*, Ex. F
26 at 3).

27  D.P. Johnson, the prison appeals coordinator, screened out Simpson's appeal on
28 December 11, 2007 for "excessive verbiage," informing him: "Simpson – please explain

- 4 -

what unlawful conduct and/or harassment this C/O has done. Be specific. Use plain, simple English. If you need assistance, let me or another staff member know." (*Id.*, Ex. B at 1). Simpson submitted an follow-up explanation on December 16, 2007, in which he stated, *inter alia*, that he was "being accuse[d] for something [that] is totally frivolous [and] untrue." (*Id.*, Ex. C).[3] Johnson rejected Simpson's amended appeal on December 31, 2007, stating:

> I'm sorry Simpson but I do not understand what exactly this officer has done. I have asked you to be specific and use plain, simple English and you are refusing to cooperate. I have asked you if you need assistance and you have not responded so I am rejecting your appeal and making copies. Do not send this appeal back or it will be confiscated and filed.

(Dkt. # 24, Ex. D).

Simpson filed this complaint on January 22, 2009. (Dkt. # 1). Thereafter, the Court dismissed a number of Simpson's claims pursuant to 28 U.S.C. § 1915A. (Dkt. # 8). The Court ordered Defendants to answer two claims: that Defendants Feltsen and Packard, with the consent of Defendants Broddrick, Bush and Zaniroll, retaliated against him in violation of his First Amendment rights by fabricating charges that he had threatened Feltsen because he "encouraged his cell partner[']s wife to take litigation against Feltsen and Packard" (Dkt. # 1, ¶¶ 42, 45); and that Defendants Bush, Broddrick, Cannon, Crocker, Ebbitt, Feltsen, Kramer, Packard, Ramacher, and Zaniroll engaged in malicious prosecution. (Dkt. # 1, ¶ 45).

Defendants Feltsen, Broddrick, Bush, Packard, Cannon, Crocker, Ebbitt, Kramer and Ramacher moved to dismiss Simpson's complaint on August 6, 2010. (Dkt. # 19). Defendant Zaniroll joined the motion to dismiss on August 19, 2010. (Dkt. # 21). Simpson submitted an opposition to the motion to dismiss on August 26, 2010, (Dkt. # 24), to which Defendants replied on September 1, 2010. (Dkt. # 25).

**II.**

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available

---

[3] On December 26, 2007, Simpson was found not guilty of threatening staff. (Dkt. # 1, Ex. H-1 at 2).

- 5 -

1 administrative remedies before filing a § 1983 action in federal court. *See* 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). Exhaustion is a prerequisite for any action regarding prison life, "even when the prisoner seeks relief not available in grievance proceedings, notably money damages." *Porter v. Nussle*, 534 U.S. 516, 523 (2002) (citing *Booth v. Churner*, 532 U.S. 731, 741 (2001)). Prisoners must exhaust before filing the action, not afterwards. *Vaden v. Summerhill*, 449 F.3d 1047, 1050-51 (9th Cir. 2006). "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance." *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (quoting *Booth*, 532 U.S. at 739-41) (emphasis and alteration in original). Failure to exhaust administrative remedies under the PLRA, however, is an affirmative defense, *Jones v. Bock*, 549 U.S. 199, 212 (2007), and the burden is on the Defendants to prove that Simpson did not exhaust by pursuing some avenue of "available" administrative relief. *Brown*, 422 F.3d at 936-37; *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).

"The level of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures." *Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010). CDC Form 602 and California regulations require inmates "to describe the problem and the action requested." *Id.* (quoting Cal. Code Regs. tit. 15, § 3084.2(a)). Because this regulation is "silent or incomplete as to [the] factual specificity" required, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Id.* (quoting *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009)).

### III.

Defendants argue that Simpson failed to exhaust available administrative remedies with regard to his First Amendment retaliation claim. The Court agrees.

Simpson's exhaustion, if it occurred, can only have been based on two grievances: the one on October 29, 2007 and the other on November 19, 2007. In the first, Simpson requested, among other things, to be transferred to the California State Prison in Sacramento; instead, he was transferred to High Desert State Prison, which is the adverse action

1    underlying Simpson's First Amendment retaliation claim. *See Rhodes v. Robinson*, 408 F.3d
2    559, 567-68 (9th Cir. 2005). But Simpson apparently never appealed this decision at all,
3    much less to the highest level, as required for proper exhaustion. *See* Cal. Code Regs. Tit.
4    15, § 3084.5. Thus, the October 29, 2007 grievance was not properly exhausted. *See*
5    *Woodford*, 548 U.S. at 84.

6    The November 19, 2007 grievance was screened out for being excessively verbose,
7    but that fact alone does not mean that Simpson failed to exhaust available remedies. A few
8    months ago, in *Sapp v. Kimbrell*, 623 F.3d 813 (9th Cir. 2010), the Ninth Circuit held that
9    "improper screening" of an inmate's grievance can render his administrative remedies
10   "effectively unavailable." *Id.* at 823 ("[I]mproper screening of an inmate's administrative
11   grievances renders administrative remedies 'effectively unavailable' such that exhaustion is
12   not required under the PLRA."); *see also Nunez v. Duncan*, 591 F.3d 1217, 1224-26 (9th Cir.
13   2010) (holding that when a prisoner "took reasonable and appropriate steps to exhaust his .
14   . . claim and was precluded from exhausting, not through his own fault but by the Warden's
15   mistake," that mistake "rendered [the inmate's] administrative remedies effectively
16   unavailable."). *Sapp* explained that:

> To fall within this exception, a prisoner must show that he attempted to exhaust his administrative remedies but was thwarted by improper screening. In particular, the inmate must establish (1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations.

21   623 F.3d at 823-24.[4]

---

[4] It is not clear whether the language quoted above from *Sapp* intends to suggest that the burden is on the prisoner-plaintiff to demonstrate that he falls within the improper screening "exception" to the exhaustion requirement. As previously noted, however, the failure to exhaust available remedies is an affirmative defense that must be proven by the defendants. *Jones*, 549 U.S. at 212. Moreover, while *Sapp* talks of an "exception" to the requirement that an inmate exhaust available remedies, the reasoning of *Sapp* and related cases is not that the prisoner is excused from exhausting available remedies, but rather that there *are* no available remedies. For those two reasons, it appears that *Sapp* did not shift the burden to prisoners to demonstrate that the screening of their grievance was improper, but,

- 7 -

1    Assuming Simpson's November 19, 2007 grievance was improperly screened, it fails
2 on the first prong of the *Sapp* test; even if that grievance had been accepted and "pursued
3 through all levels of administrative appeals," *id.* at 823, it would not have sufficed to exhaust
4 his First Amendment claim. Although Simpson's grievance, read liberally, complained that
5 prison officials had fabricated an RVR against him for allegedly threatening Feltsen and
6 requested that the officials be reprimanded and any harassment documented. The grievance
7 makes no mention of High Desert State Prison, Simpson's transfer, or the exercise of his First
8 Amendment rights that allegedly precipitated the retaliatory transfer. Although the grievance
9 may have "alert[ed] the prison to the nature" of other types of claims, it was not sufficient
10 to put the prison officials on notice that Simpson was alleging anything similar to the First
11 Amendment retaliation claim in his complaint. *Morton*, 599 F.3d at 946. Accordingly, the
12 Court must dismiss Simpson's First Amendment claim without prejudice for his failure to
13 exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *Sapp*, 623 F.3d at 828.

14                                            **IV.**

15    For the foregoing reasons, Defendants' Motions to Dismiss (Dkt. # 19 & 22)
16 Simpson's First Amendment claim for failure to exhaust is GRANTED, but without
17 prejudice to Simpson refiling if he can successfully exhaust. 42 U.S.C. § 1997e(a); *Sapp*,
18 623 F.3d at 828. Because the Court has dismissed the only federal claim, the Court declines
19 to exercise supplemental jurisdiction over the remaining state-law claim for malicious
20 prosecution, which is DISMISSED without prejudice to refiling in state court. *See* 28 U.S.C.
21 § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim
22 if . . . the district court has dismissed all claims over which it has original jurisdiction.");
23 *Sanford v. MemberWorks, Inc.*, No. 09-55502, slip op. at 17505 (9th Cir. Oct. 25, 2010)
24 ("[I]n the usual case in which all federal law claims are eliminated before trial, the balance
25 of factors to be considered under the pendent jurisdiction doctrine — judicial economy,
26 convenience, fairness, and comity — will point toward declining to exercise jurisdiction over

27 ───────────────
28 instead, the burden remains on defendants to show that any screening was proper.

- 8 -

the remaining state-law claims.") (citation omitted, alteration in original). Defendants' motion to dismiss is denied in all other respects as moot. The Clerk of the Court shall enter judgment accordingly and close this case.

It is so ordered.

                         /s/ Marsha S. Berzon
                         MARSHA S. BERZON
                         United States Circuit Judge, sitting by designation

DATED this 16th day of December, 2010.